**B.J. BURLESON, Petitioner–Appellant,**

v.

**James SAFFLE, Respondent–Appellee,**

**and**

**Drew Edmondson, Respondent.**

**No. 00–6254.**

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 2002.

Susan M. Otto, Federal Public Defender, Oklahoma City, OK, for Petitioner–Appellant.

Diane L. Slayton, Assistant Attorney General, W.A. Drew Edmondson, Attorney General of Oklahoma, with her on the briefs, Oklahoma City, OK, for Respondent and Respondent–Appellee.

Before LUCERO and McWILLIAMS, Circuit Judges, and STAGG,* District Judge.

## CERTIFICATION OF QUESTION OF STATE LAW

LUCERO, Circuit Judge.

The United States Court of Appeals for the Tenth Circuit, pursuant to 10th Cir. R. 27.1 and Okla. Stat. tit. 20, § 1602, hereby respectfully submits to the Oklahoma Court of Criminal Appeals a certified question of Oklahoma law. The answer to this question, which is not clearly provided by Oklahoma law, may be determinative of

---

* The Honorable Tom Stagg, District Judge for the Western District of Louisiana, sitting by designation.

the above-captioned matter now pending before this Court.

## The Question[1]

On August 1, 1997, the Oklahoma Court of Criminal Appeals held that "where a vehicle is used to facilitate the intentional discharge of a weapon during a single transaction or 'shooting event' only one count of Using a Vehicle to Facilitate the Intentional Discharge of a Firearm [Okla. Stat. tit. 21, § 652(B)] is appropriate." *Locke v. State*, 943 P.2d 1090, 1095 (Okla. Crim.App.1997). Did the statute have the same meaning under Oklahoma law on May 2, 1997, the day petitioner-appellant's criminal conviction for two counts of violating this section was affirmed?

### I

B.J. Burleson asks this Court to reverse the decision of the district court denying his petition for a writ of habeas corpus. He contends that his Oklahoma state court conviction on two counts of using a vehicle to facilitate the discharge of a weapon was in violation of the Double Jeopardy Clause of the Fifth Amendment. We have certified the above question to the Oklahoma Court of Criminal Appeals ("OCCA") because the answer will help us determine the proper state law predicate for our resolution of the federal constitutional question raised in this case.

### II

Around midnight on February 16, 1995, Burleson was riding in the backseat of a car with four friends. Earlier that night the group engaged in a series of hostile telephone calls with two other men, Kristoffer Trim and Bobby Lindsey, during which the parties exchanged various threats. Burleson and his friends arranged to meet Trim and Lindsey at a convenience store to settle their dispute by fistfight, but the rendezvous never occurred. Instead, Burleson and the others drove to the house where Trim and Lindsey were staying. As the car passed the house, Burleson fired approximately five shots at Trim and Lindsey, one of which hit Trim and left him paralyzed.

Burleson was convicted on two counts of violating Oklahoma's "drive-by shooting" statute, Okla. Stat. tit. 21, § 652(B), and was sentenced to two consecutive twenty-year terms of imprisonment. He appealed his convictions to the OCCA, alleging among other things that he had been subjected to double jeopardy by being twice punished for the single offense of using a vehicle to facilitate the discharge of a weapon. By a three-to-two vote in an unpublished summary decision dated May 2, 1997, the OCCA affirmed Burleson's convictions and sentences.

On August 1, 1997, the OCCA issued an opinion in another case that appeared as if it might have importance for Burleson. In *Locke v. State*, the OCCA held that "where a vehicle is used to facilitate the intentional discharge of a weapon during one single transaction or 'shooting event' only one count of Using a Vehicle to Facilitate the Intentional Discharge of a Firearm is appropriate." 943 P.2d 1090, 1095 (Okla. Crim.App.1997). Burleson proceeded to seek state post-conviction relief in Oklahoma County District Court ("OCDC") in the wake of the *Locke* decision, which even the state of Oklahoma conceded was in direct conflict with the OCCA's earlier summary affirmance of Burleson's convictions. (Order Den. Post–Conviction Relief

---

1. Pursuant to Okla. Stat. tit. 20, § 1604(3), we acknowledge that the Oklahoma Court of Criminal Appeals, acting as the receiving court, may reformulate the question we have certified to it.

at 2.) The OCDC noted that if *Locke* had been issued by the OCCA while Burleson's convictions were not yet final, retroactive application of the decision would have been required (*id.*), and Burleson presumably would have been afforded relief. Unfortunately for Burleson, the OCCA's decision in *Locke* was issued *one day* after his convictions became final.[2] As a result, the OCDC stated that "absent directions from the Court of Criminal Appeals" it would decline to apply *Locke* retroactively to Burleson's case. (*Id.*) The OCCA, in turn, refused to give such instructions and on nonretroactivity grounds alone declined to grant Burleson his requested post-conviction relief. (Order Affirming Den. Post–Conviction Relief at 1–2.)

Burleson subsequently filed a petition for a writ of habeas corpus in federal court, again alleging that he was subjected to double jeopardy, and further urging that the rule of *Locke* be applied to his case. The matter was referred to a magistrate judge, who recommended that the district court deny the petition because (1) the application of *Locke* to Burleson's case was barred by the nonretroactivity principle of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and (2) the OCCA's decision in Burleson's case was not contrary to or an unreasonable application of clearly established federal law. (Report & Recommendation at 12–13.) The district court accepted the magistrate's recommendation, and this appeal

followed. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c)(1)(A).

## III

Burleson contends that his conviction on two counts of violating Oklahoma's drive-by shooting statute offends the Double Jeopardy Clause of the Fifth Amendment, which provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb."[3] U.S. Const. amend. V. The protections of the Double Jeopardy Clause extend not only to successive prosecutions for the same offense but also, as is allegedly the case here, to "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794, 802–03, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *see also United States v. Morris,* 247 F.3d 1080, 1083 (10th Cir. 2001).

The offense at issue centers on Oklahoma's drive-by shooting statute, which provides:

Every person who uses any vehicle to facilitate the intentional discharge of any kind of firearm, crossbow, or other weapon in conscious disregard for the safety of any other person or persons shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary for a term of not less

**2.** Burleson's appeal became final on July 31, 1997, ninety days after the OCCA's denial of his appeal, at the conclusion of the period for filing a petition for a writ of certiorari to the United States Supreme Court. *See Walker v. State,* 933 P.2d 327, 331 n. 7 (Okla.Crim.App. 1997) (" 'Final' means a case where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari had elapsed." (quotation omitted)); *see also Caspari v. Bohlen,* 510

U.S. 383, 390–91, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); *United States v. Burch,* 202 F.3d 1274, 1276, 1279 (10th Cir.2000).

**3.** In *Benton v. Maryland,* the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment was incorporated against the states by way of the Due Process Clause of the Fourteenth Amendment. 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

than two (2) years nor more than twenty (20) years.

Okla. Stat. tit. 21, § 652(B). Burleson asserts that the statute precludes multiple convictions arising out of one shooting spree—even if more than one person is shot at—because the plain language of the statute makes clear that the use of a vehicle is the prohibited conduct, regardless of the number of potential victims. If the Oklahoma legislature had intended to allow separate convictions for each person whose safety was threatened, Burleson suggests, it would not have included the reference to "any other person *or persons*" in the statute. *Id.* (emphasis added). Thus, he contends, it would be a double jeopardy violation to allow his conviction on two counts of violating the statute to stand even though he engaged in only a single course of conduct. Burleson also notes, correctly, that the OCCA ultimately adopted this very argument in *Locke.*

### A

The district court, accepting the magistrate's recommendation, first refused to grant Burleson habeas corpus relief on the grounds that *Teague v. Lane* bars the retroactive application of *Locke* to his case. It is clear, however, that the nonretroactivity principle of *Teague* has no bearing on this case and should not have been addressed by the magistrate in his recommendation to the district court. Nonetheless, it is likewise clear that we have no authority to order the OCCA to apply *Locke* retroactively.

■ It is not the Supreme Court's decision in *Teague* that bars the retroactive application of *Locke* to Burleson's case. Rather, it is the standard of review imposed upon federal habeas courts by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to AEDPA, we may not grant an application for a writ of habeas corpus with respect to any claim adjudicated on the merits by a state court unless that state court decision

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To the extent that Burleson asks us to grant him habeas relief by applying the "new rule" of *Locke* to his already final case, we have only one question to consider: Was the OCCA's decision not to apply *Locke* retroactively to Burleson's case contrary to or an unreasonable application of federal law? The answer to that question is clearly *no,* because whether or not a new rule of state law may be applied retroactively is a pure state law question.[4]

The "general rule of [Oklahoma] law," according to the OCCA, is that "new rules or intervening changes in the law should only be applied prospectively from their effective date, especially on collateral review, unless they are specifically declared to have retroactive effect." (Order Affirming Den. of Post–Conviction Relief at 1–2.) This state law ruling provides no grounds for the granting of habeas relief, and we do not consider it in our habeas analysis. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (affirming that "federal habeas corpus relief does not lie for errors of state law"); *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam) (noting

---

**4.** Burleson does not contend, and we do not consider whether, the state's failure to apply *Locke* retroactively to his case was a violation of his federal due process rights.

that in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States). It is therefore unnecessary for us to engage in a *Teague* analysis with respect to the state law question of the applicability of *Locke* to Burleson's case.

■ Although *Teague* itself is not relevant to the outcome of this case, we further note that the magistrate's application of *Teague* was analytically flawed. *Teague*'s holding is that "new constitutional rules *of criminal procedure* will not be applicable to those cases which have become final before the new rules are announced," 489 U.S. at 310, 109 S.Ct. 1060 (emphasis added), unless a new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or could be considered a "watershed rule of criminal procedure," *id.* at 311, 109 S.Ct. 1060 (quotation omitted). To put the matter simply, *Locke* does not announce a new constitutional rule of criminal procedure. Rather, we think it clear that *Locke* is the Oklahoma court's substantive interpretation of a criminal statute, and that it is neither "new" nor "procedural."

In the federal statutory context, the Supreme Court has stated that "because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Moreover, a rule is not "new" when it is based squarely on statutory interpretation. *United States v. Talk,* 158 F.3d 1064, 1071 (10th Cir.1998); *see also United States v. Shelton,* 848 F.2d 1485, 1489 (10th Cir.1988) (noting that a "statute cannot mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards" (quotation omitted)). The circuit courts have accordingly found *Teague* inapplicable where a habeas petitioner seeks application of a court decision newly construing substantive law. *See, e.g., Talk,* 158 F.3d at 1071 (stating that *Teague* is inapplicable where a new holding results from the interpretation of the sentencing guidelines); *Murr v. United States,* 200 F.3d 895, 905–06 (6th Cir.2000) (holding *Teague* inapplicable where an earlier decision interpreted a statute to require jury unanimity for each of several elements); *Lanier v. United States,* 220 F.3d 833, 838 (7th Cir.) (same), *cert. denied,* 531 U.S. 930, 121 S.Ct. 312, 148 L.Ed.2d 250 (2000). *Locke* is likewise a substantive interpretation of a criminal statute; thus, if *Locke* had involved construction of a federal statute, a federal court could not have refused to apply its holding retroactively to a case on collateral review.[5]

## B

Burleson also argues that, irrespective of the OCCA's decision in *Locke,* his con-

---

5. We note parenthetically that the Oklahoma courts appear to have incorporated into state law the Supreme Court's *Teague* approach to analyzing whether a new rule of law should have retroactive effect, *see Ferrell v. State,* 902 P.2d 1113, 1114–15 (Okla.Crim.App.1995), and that the OCCA seems to have applied *Teague* principles in reaching its determination that Burleson was not entitled to have the rule of *Locke* applied to his case (*see* Order Affirming Den. of Post–Conviction Relief at 1–2). Although our observations on the point are merely advisory, and Oklahoma is free to extend the rule of *Teague* in any manner it sees fit, we nonetheless note that the OCCA's application of *Teague* in the present case appears—from the perspective of a federal court—to suffer from the same analytic flaw to be found in the magistrate's recommendation.

viction on two counts of violating the Oklahoma drive-by shooting statute offends the Double Jeopardy Clause. The district court denied habeas relief based on this argument as well, holding that the OCCA's decision in Burleson's case was not contrary to or an unreasonable application of clearly established federal law.

### 1. *Blockburger* as Controlling Federal Law

In reviewing the district court's decision, our threshold question is whether the Supreme Court has clearly established the federal law to be applied to this type of alleged double jeopardy violation. We conclude that it has.

In a long line of double jeopardy decisions, the Supreme Court has held that it is crucial to determine whether the criminal statute at issue proscribes conduct that is of a discrete or of a continuing nature. The source of this doctrine is a pair of bookend cases from 1887 that illuminates the distinction nicely. In *Ex parte Snow*, the Court held that a defendant could be convicted only once under a statute providing that "if any male person ... cohabits with more than one woman, he shall be deemed guilty of a misdemeanor," 120 U.S. 274, 275, 7 S.Ct. 556, 30 L.Ed. 658 (1887), because this offense "is, inherently, a continuous offence, having duration; and not an offence consisting of an isolated act," *id.* at 281, 7 S.Ct. 556. In *Ex parte Henry*, in contrast, the Court allowed multiple convictions to stand pursuant to the mail fraud statute—which provided that no person "shall, in and for executing [any] scheme or artifice [to defraud] ... place any letter or packet in any post-office of the United States," 123 U.S. 372, 373, 8 S.Ct. 142, 31 L.Ed. 174 (1887) (quotation omitted)—because each act of mailing a letter from the post office in furtherance of a fraudulent scheme "is not, as in the case

of *In re Snow*, a continuous offence, but [instead] consists of a single isolated act, and is repeated as often as the act is repeated," *id.* at 374, 8 S.Ct. 142 (citation omitted). These cases establish the conceptual framework for distinguishing between statutes that criminalize individual acts and statutes that criminalize a course of conduct.

■ The modern articulation of this distinction and of its importance is to be found in *Blockburger v. United States*, in which the Supreme Court stated plainly that "[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty." 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (quotation omitted). As an illustration of this rule, the Court cited what has come to be known as the "mail bags case" of *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). In *Ebeling*, the defendant was convicted under several counts for the willful tearing of mail bags with the intent to rob. *Id.* at 627, 35 S.Ct. 710. The defendant contended that his tearing into several mail bags was a single course of action and that multiple punishments were therefore unconstitutional. *Id.* at 628, 35 S.Ct. 710. The Court disagreed, noting that the statute at issue proscribed the tearing of "any mail bag," and explaining that "[t]hese words plainly indicate that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation," and that with the destruction of any one mail bag "the offense is complete." *Id.* at 629, 35 S.Ct. 710. Had the statute proscribed a course of action, the Double Jeopardy Clause would have precluded multiple convictions for the defendant's actions. *See United States v. Anderson*, 59 F.3d 1323, 1333 (D.C.Cir.

1995) (en banc) (noting that the result in *Ebeling* would have been different if the statute read, "whoever uses a knife during or in relation to cutting *mailbags* ..." (emphasis added)).[6]

We thus conclude that federal law is clear that "there can be but one penalty" when a statute criminalizes a course of action rather than an individual act. *Blockburger,* 284 U.S. at 302, 52 S.Ct. 180 (quotation omitted); *see also United States v. Mathis,* 673 F.2d 289, 293–95 (10th Cir. 1982).

### 2. Ascertaining the Legislature's Intent

The fact that the Supreme Court has clearly established the unconstitutionality of multiple punishments for a single "course of action" does not by itself dispose of the present case. We may grant Burleson habeas relief only if we are convinced that the OCCA's affirmance of his conviction was contrary to, or an unreasonable application of, *Blockburger*'s mandates—a conclusion that itself depends upon whether Oklahoma's drive-by shooting statute criminalizes a course of action rather than a discrete act.

The Double Jeopardy Clause could not have been offended in Burleson's case if the Oklahoma legislature intended to allow defendants to be punished multiple times pursuant to the state's drive-by shooting statute for engaging in a single shooting event. *See Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than pre-vent the sentencing court from prescribing greater punishment than the legislature intended."). If the Oklahoma legislature intended the use of a vehicle for prohibited purposes to be the criminal conduct proscribed by statute regardless of the number of potential victims, Burleson could be convicted of only one count of violating Oklahoma's drive-by shooting statute. In such a circumstance, the OCCA's affirmance of Burleson's multiple convictions would necessarily have been an unreasonable application of federal law as established by the Supreme Court in *Blockburger.* If, however, the legislature intended to allow for multiple prosecutions when multiple potential victims are endangered, then Burleson's convictions did not violate the Double Jeopardy Clause and the OCCA's affirmance of the convictions would necessarily have been reasonable and consistent with federal law.

"In assessing whether a state legislature intended to prescribe cumulative punishments for a single, criminal incident, we are bound by a state court's determination of the legislature's intent." *Birr v. Shillinger,* 894 F.2d 1160, 1161 (10th Cir. 1990); *see also Hunter,* 459 U.S. at 368, 103 S.Ct. 673 ("We are bound to accept the [State] court's construction of that State's statutes."). In the present case, however, the OCCA offered no public construction of the Oklahoma statute at all. Indeed, the OCCA's summary, unpublished opinion provides us with no basis for determining on what grounds or by what reasoning it reached its decision. Moreover, there is no prior decision from the Oklahoma courts construing the statute, thereby making it impossible for us—if we decided

---

**6.** The defendant in *Blockburger* was convicted on two counts of violating the Harrison Narcotic Act after he completed a sale of drugs to a purchaser and immediately thereupon received payment for an additional quantity of drugs to be delivered the next day. 284 U.S. at 301, 52 S.Ct. 180. In finding no double jeopardy violation, the Court noted that the Narcotic Act "does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes *any sale.*" *Id.* at 302, 52 S.Ct. 180 (emphasis added).

it were appropriate—to "look through" the OCCA's summary decision to determine whether its reasoning in this case was consistent with its prior holdings. *See Cummings v. Evans,* 161 F.3d 610, 615 (10th Cir.1998) (noting that this Court "has not addressed whether a 'look through' principle applies to summary dispositions in the double jeopardy context"). Indeed, the only authoritative construction of the drive-by shooting statute is to be found in the subsequently decided case of *Locke,* which, as noted above, interpreted the statute as criminalizing a course of conduct rather than an individual act. 943 P.2d at 1095.

Because resolution of the federal double jeopardy issue in the present case is inextricably intertwined with the proper construction of Oklahoma's statute, the OCCA's silence as to the reasons for its affirmance of Burleson's conviction puts us in an unusual position. Pursuant to AEDPA our task is ordinarily straightforward enough, even where resolution of a federal question depends upon the resolution of a predicate state-law question: We defer absolutely to the state court's disposition of the state-law question and proceed to review the court's application of federal law to ascertain whether or not it was reasonable. *See Schad v. Arizona,* 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (opinion of Souter, J., with Rehnquist, C.J., O'Connor and Kennedy, JJ., concurring) (noting that federal courts are limited to deciding whether a state's criminal statute, as construed by the state's courts, violates the Constitution); *see also Johnson v. Fankell,* 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (hold-ing that a state court's construction of state statutes is "a ruling on a question of state law that is as binding on [federal courts] as though the precise words had been written into the statute" (quotation omitted)). Moreover, we have noted that "there is nothing inherently objectionable in the Oklahoma court's use of summary opinions in unpublished cases," *King v. Champion,* 55 F.3d 522, 526 (10th Cir. 1995), and that we will normally defer to a state court's result even when it is unaccompanied by supporting reasoning, *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999).

The unusual confluence of circumstances attending the present case makes impossible an easy resolution of the federal constitutional question presented to us. Here the defendant's constitutional rights are intertwined with the construction of a state statute, the state court was silent as to the statute's proper construction, its criminal courts have never previously interpreted the statute, and its highest criminal court has subsequently construed the statute in a manner that implicates the defendant's constitutional rights. In this situation, it would be improper for us as a federal reviewing court to divine which construction the state court chose to give its own statute from amongst a universe of more or less plausible possibilities. In the interest of comity, we will not lightly presume that the state court resolved a statutory question in a manner that would lead to a constitutional violation. As the Supreme Court observed in a slightly different context,

> We are not at liberty to conjecture that the [state] trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere

error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). Nor, given our responsibility to provide the type of meaningful review that AEDPA requires of us, *see Aycox,* 196 F.3d at 1178 (noting that when faced with a state court's summary decision we are still obliged under AEDPA to conduct an "independent review of the record and pertinent federal law"), will we unquestioningly presume that the state court adopted a particular saving construction of its own statute that would ensure its constitutional application in a given case—at least when the state court has subsequently interpreted the statute in a manner implicating a defendant's constitutional rights.

We conclude that the proper course of action in the present case is to certify the predicate state-law question to the OCCA and stay the proceedings until we receive an answer. *Cf. Stewart v. Smith,* 534 U.S. 157, ——, 122 S.Ct. 1143, 151 L.Ed.2d 592 (2001) (per curiam) (certifying a question to state court because the resolution of the federal issue depended upon the interpretation of a state rule of law that had not been addressed in the state court's elliptical holdings in the alternative). Once we learn whether the drive-by shooting statute had the same meaning under Oklahoma law on May 2, 1997 (when Burleson's conviction was affirmed) as it did on August 1, 1997 (when the OCCA issued *Locke v. State*), we will be able to resolve the double jeopardy claim that is before us.

### IV

The clerk of this Court is directed to transmit a copy of this certification order to counsel for all parties to the proceedings in this Court. The clerk shall also submit to the Oklahoma Court of Criminal Appeals a certified copy of this order, together with copies of the briefs filed in this Court, copies of the district court's judgment, the names and addresses of counsel of record, and either the original or a copy of the record as filed in this Court by the parties.

This appeal is ordered **STAYED** pending resolution of the question certified herein.