**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD CHAPMAN,

       Petitioner - Appellant,

  v.

TIM LeMASTER, Warden, New
Mexico State Penitentiary;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

       Respondents - Appellees.

No. 01-2240

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-98-161-BB/KBM)**

---

Stephen P. McCue, Federal Public Defender, Albuquerque, New Mexico, for
Appellant.

Martha Anne Kelly, Assistant Attorney General (Patricia A. Madrid, New Mexico
Attorney General, with her on the brief), Albuquerque, New Mexico, for
Appellees.

---

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**HARTZ**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Petitioner-appellant Richard Chapman appeals an order of the United States District Court for the District of New Mexico dismissing his 28 U.S.C. § 2254 *habeas corpus* petition with prejudice. After a jury trial in 1979, Chapman was convicted of felony murder and robbery and sentenced to life imprisonment. In his petition, Chapman argues that (1) the trial court's failure to instruct the jury about the dangerousness of the underlying felony pursuant to *State v. Harrison*, 564 P.2d 1321 (N.M. 1977), violated his due process rights; (2) the trial court's failure to instruct the jury about the requisite *mens rea* for felony murder as required by *State v. Ortega*, 817 P.2d 1196 (N.M. 1991), violated his due process rights; and (3) he received ineffective assistance of pretrial counsel and trial counsel. The district court granted a certificate of appealability ("COA") only on the *Ortega* claim. Exercising jurisdiction under 28 U.S.C. § 2253, this court **affirms** the district court's decision to deny the writ on the *Ortega* claims, **denies** a COA on Chapman's *Harrison* and ineffective assistance claims and **dismisses** those portions of the appeal.

## II. BACKGROUND

### A. Factual Background

The relevant facts surrounding Chapman's crimes are undisputed. In 1978, the decomposed body of Terry Sanders was found in a ravine near Farmington,

-2-

New Mexico.  Chapman, Jim Humiston, Larry Smith, and Smith's wife Patricia were arrested in connection with Sanders' murder.  All except Chapman pleaded guilty to murder or a lesser offense.  At trial, Humiston testified as a prosecution witness.  He testified that the night before Sanders' murder, Chapman was present when Humiston and Smith discussed stealing Sanders' van and money.  When Smith suggested killing Sanders, Chapman rejected the idea.  They planned to take Sanders out to a deserted area on the pretense of rustling calves.  On direct and redirect examination, Humiston testified that they planned to use some degree of force or violence to rob Sanders because Sanders was a large man.  On cross and recross examination, Humiston disclaimed any plan of force or violence, testifying instead that the three men planned to lure Sanders away from his van by proposing to steal a calf, circle back to the van, and steal the van when Sanders was away.

When the four men stopped to ostensibly rustle calves, Chapman got out of Sanders' van and went to a road to act as a lookout.  Humiston and Smith remained in the van with Sanders.  Humiston then incapacitated Sanders by striking him on the head with a pipe concealed in his boot and pushed him out of the van.  Upon hearing the commotion, Chapman returned to the van and expressed his dismay at the turn of events.  Chapman had no idea that Humiston would use a pipe to strike Sanders.

Humiston then tied Sanders' hands behind his back while Chapman returned to his lookout position. Humiston was returning to Sanders' van when he heard a gunshot; Smith had shot Sanders in the head. According to Humiston, neither he nor Chapman knew that Smith would kill Sanders. Chapman was upset by the shooting. Afterwards, the three men and Smith's wife drove the stolen van to Colorado.

## B. Procedural Background

On September 25, 1978, a grand jury in San Juan County, New Mexico, district court indicted petitioner Chapman of first degree murder, felony murder, and armed robbery. Chapman had made a pretrial statement to police in which he stated "I did not kill Terry Sanders and ah—I was with the people involved under fear for my own life." On the basis that he received ineffective assistance of pretrial counsel, Chapman moved to suppress that statement, which the trial court denied. A jury found Chapman guilty of robbery and felony murder and he was sentenced to life imprisonment.

The New Mexico Supreme Court affirmed Chapman's convictions on direct appeal. Relying on *State v. Harrison*, Chapman argued that the trial court's failure to instruct the jury on the dangerousness of the underlying felony violated state law. 564 P.2d at 1324. The New Mexico Supreme Court rejected this argument.

Chapman sought collateral review by the New Mexico Supreme Court, claiming ineffective assistance of pretrial counsel with respect to Chapman's pretrial statement and trial counsel for failing to impeach a prosecution witness. The court denied the petition but remanded the matter to state district court, whereupon the petition was denied on the merits after an evidentiary hearing. The New Mexico Supreme Court subsequently denied certiorari review.

Chapman then filed a § 2254 petition in federal district court in New Mexico. As amended, the petition raised the ineffective assistance claims and a federal due process claim based on *Harrison*. During briefing in federal district court, the New Mexico Supreme Court decided *State v. Ortega*, which held that an intent to kill is an essential element of New Mexico's felony murder statute. 817 P.2d at 1204-05. Chapman raised a due process claim based on *Ortega* in his reply brief. The district court dismissed his petition with prejudice.

On appeal, this court noted that Chapman had failed to exhaust his due process claim based on *Ortega*. *See Chapman v. Kerby*, No. 93-2138, 1994 WL 386006, at **1 (10th Cir. July 22, 1994) (per curiam). Pursuant to *Rose v. Lundy*, 455 U.S. 509, 510 (1982), we ordered the district court to dismiss the petition without prejudice. *See id.*

Chapman then returned to state court to exhaust his *Ortega* due process claim by filing a *pro se habeas* petition in San Juan County district court. After

-5-

oral argument, the state district court denied the petition with prejudice. The court noted that Chapman never raised the *Ortega* claim during trial, on direct appeal, or in his first state *habeas* petition. It concluded that Chapman's petition was "a successive writ and as such should be dismissed." The court nevertheless addressed Chapman's arguments by stating that *Ortega* "establishes a new element which the State must prove in cases of felony murder . . . [but] should not be applied retroactively to Petitioner's case and conviction." The New Mexico Supreme Court initially granted a writ of certiorari but quashed the writ after briefing by the parties.

In 1998, Chapman filed another § 2254 petition in federal district court raising the *Ortega* due process claim, the *Harrison* due process claim, and the claims of ineffective assistance of pretrial counsel and trial counsel. The federal district court adopted the magistrate judge's proposed findings and recommendation to dismiss the petition with prejudice. New Mexico does not argue on appeal that any of Chapman's claims are procedurally barred or unexhausted.

## III. STANDARD OF REVIEW

Because Chapman filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), its provisions govern Chapman's appeal. *See Johnson v. Gibson*, 254 F.3d 1155,

1159 (10th Cir. 2001). Chapman argues, however, that AEDPA's standards of review should not apply in this case. Chapman claims when he chose to return to state court to exhaust his *Ortega* claim, he relied on the prevailing standard of review at the time, which provided for *de novo* review by federal *habeas* courts. *See generally Wright v. West*, 505 U.S. 277, 301-03 (1992) (O'Connor, J., concurring in the judgment). Chapman contends that he had no reason to believe that, once he returned to federal court, his claims would be reviewed under AEDPA's more deferential standards of review. *See* 28 U.S.C. § 2254(d). Applying AEDPA standards to his claims, Chapman asserts, would be impermissibly retroactive under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

This court, however, has previously rejected similar retroactivity arguments. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Although neither *Trice* nor *Moore* involved a dismissal of a mixed petition and a subsequent return to federal *habeas* court after exhaustion in state courts, the reasoning in those cases is fully applicable here. We have consistently held that AEDPA applies to petitions filed after AEDPA's effective date, regardless of when the state proceedings occurred. *See Trice*, 196 F.3d at 1158; *Moore*, 195 F.3d at 1163. We thus apply the AEDPA standards of review.

Chapman's federal due process claim premised on *Harrison* was not raised before the state courts and thus not addressed on the merits.[1] This court thus "exercise[s] our independent judgment in deciding the claim." *Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001). "In doing so, we review the federal district court's conclusions of law de novo and its findings of fact, if any, for clear error." *Id.*

Chapman's *Ortega* and ineffective assistance claims, however, were adjudicated on the merits by state courts. For those claims, Chapman is "entitled to federal habeas corpus relief only if he can establish that a claim adjudicated by the state courts 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Trice*, 196 F.3d at 1159 (quoting 28 U.S.C. § 2254(d)(1)). A state court determination is contrary to clearly established federal law when the state court applies a rule which contradicts governing Supreme Court precedents or resolves a case with materially indistinguishable facts differently than the Supreme Court would. *See Thomas v.*

_____

[1]The magistrate judge below correctly noted that Chapman raised this claim on direct appeal as a state law claim. Although Chapman did not raise a federal due process claim in the state courts based on *Harrison* and thus did not exhaust this claim, we nevertheless address the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) (authorizing court to deny a petition notwithstanding petitioner's failure to exhaust).

*Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000) (discussing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably applies the precedent to the facts of the state prisoner's case. *See id.* AEDPA also authorizes this court to grant *habeas* relief if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This court presumes that the state court's factual determinations are correct, although the prisoner may rebut that presumption with clear and convincing evidence. *See id.* § 2254(e)(1).

## IV. *HARRISON* DUE PROCESS CLAIM

Chapman's first claim is that the trial court's failure to instruct the jury on the inherently or foreseeably dangerous element of felony murder, as required by the New Mexico Supreme Court in *Harrison*, violated due process. In *Harrison*, which was binding state precedent at the time of Chapman's trial, the defendant was convicted of false imprisonment and felony murder. *See* 564 P.2d at 1321. When *Harrison* was decided in 1977, New Mexico defined murder as "the unlawful killing of one human being by another with malice aforethought, either express or implied, by any of the means with which death may be caused." *Id.* at 1323. First degree murder included "all murder perpetrated . . . in the

commission of or attempt to commit any felony." *Id*.[2]  The court noted the

tension between the felony murder statute's conclusive presumption that a

homicide committed during the course of any felony is first-degree murder and

the requirement that first-degree murder be committed with malice aforethought

or by "a greatly dangerous act without regard to human life." *Id.* at 1324.  The

court concluded that "[t]o presume conclusively that one who commits any felony

has the requisite mens rea to commit first-degree murder is a legal fiction we no

longer can support." *Id.*  In cases when the underlying felony is less than first

degree, the New Mexico Supreme Court continued, "only those known to have a

high probability of death may be utilized for a conviction of first-degree

murder. . . . [T]he mens rea of one who is committing a felony which is

inherently or foreseeably dangerous to human life is sufficient to justify

convicting a defendant of felony murder." *Id.*  In applying this additional

requirement, "both the nature of the felony and the circumstances surrounding its

commission may be considered." *Id.*  The New Mexico Supreme Court ultimately

---

[2]These definitions of murder and felony murder governed at the time
Chapman committed his offenses.  Although New Mexico has since amended its
first degree murder statute, *see* N.M. Stat. Ann. § 30-2-1(A) (Michie 1978), the
holding in *Harrison* remains applicable.  *See State v. Ortega*, 817 P.2d 1196, 1205
(N.M. 1991) ("The holding in *Harrison* was that felony murder must be
predicated on a first degree or other inherently dangerous felony.  We believe this
interpretation of the statute remains appropriate.").

concluded that whether a felony was inherently or foreseeably dangerous to human life was a question for the jury. *See id.*

In this case, Chapman was convicted of robbery, a third-degree felony, and thus *Harrison* applies to the felony murder conviction. N.M. Stat. Ann. § 30-16-2 (Michie 1978). New Mexico does not dispute that the trial court failed to expressly instruct the jury that it must find the underlying felony of robbery had "a high probability of death" or was "inherently or foreseeably dangerous to human life."[3] Chapman contends that the failure to instruct the jury on an

---

[3]The trial court instructed the jury on the felony murder count as follows:

> For you to find the defendant guilty of felony murder, which is first degree murder, as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant committed or attempted to commit the crime of robbery or armed robbery;
> 2. During the commission of or the attempt to commit robbery or armed robbery, the defendant caused the death of Terry Lynn Sanders;
> 3. This happened in New Mexico on or about the 24th day of April, 1978.

The jury was also instructed that Chapman need not have committed the robbery himself to be convicted of felony murder, but could be convicted if he "helped, encouraged or caused" the robbery to be committed. The trial court in turn instructed the jury on the elements of robbery as follows:

> For you to find the defendant guilty of robbery as charged in Count II, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

(continued...)

essential element of felony murder violated his due process rights. According to

Chapman, "[t]here is a reasonable likelihood the jury interpreted its instructions

to allow Chapman to be convicted of felony murder without a finding that he

committed an offense that was inherently dangerous or under circumstances or in

a manner dangerous to human life."

On direct appeal, the New Mexico Supreme Court rejected Chapman's

argument. Its entire discussion of Chapman's *Harrison* claim explained:

> The element of inherent danger required by <u>Harrison</u> was
> included in the instruction concerning robbery, the underlying felony.
> The instruction given on this charge required the jury to find that
> defendant had "threatened force or violence" before he could be
> convicted of robbery in any degree. This instruction on the
> underlying felony satisfies the "inherent dangerous" element of
> felony murder jury instructions. Each instruction need not contain
> within its limits all the elements to be considered, so long as the
> instructions as a whole do contain them. <u>State v. McFerren</u>, 80 N.M.
> 622, 59 P.2d 148 (Ct. App. 1969), <u>cert. denied</u>, 80 N.M. 731, 460
> P.2d 26 (1969).

Chapman argues, however, that simply because the jury was instructed that

"threatened force or violence" is an essential element of robbery does not

necessarily mean the jury was instructed that Chapman's robbery was inherently

---

[3](...continued)
    1. The defendant took a 1972 Chevrolet van from Terry Lynn
Sanders or from his immediate control intending to permanently
deprive Terry Lynn Sanders of the van;
    2. The defendant took the van by threatened force or violence;
    3. This happened in New Mexico on or about the 24th day of
April, 1978.

dangerous. He contends that a robbery may be committed under circumstances which are not dangerous to the victim.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Rael v. Sullivan*, 918 F.2d 874, 875 (10th Cir. 1990) (explaining that "complete failure to instruct [the jury] on an essential element of an offense violates the right to due process"). On *habeas* review, however, the New Mexico courts' interpretation of the state felony murder statute is a matter of state law binding on this court. *See Rael,* 918 F.2d at 876 (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). In this case, the New Mexico Supreme Court determined on direct review that the inherent dangerousness element in *Harrison* is satisfied by proof of threatened force or violence. This is a determination of state law over which this court has no power to question. *See id.* That the *Harrison* claim was presented to the New Mexico Supreme Court as a matter of state law, and not federal due process, strengthens our conclusion that the court made a state law determination. Accordingly, the jury was properly instructed as a matter of state law on all the elements defined in *Harrison*, and the district court properly denied Chapman's federal due process claim.

## V. *ORTEGA* DUE PROCESS CLAIM

Chapman next asserts that the trial court's failure to instruct the jury on the requisite *mens rea* element for felony murder violated federal due process. In *State v. Ortega*, which was decided nearly twelve years after Chapman's convictions became final, the New Mexico Supreme Court held that the felony murder statute has a *mens rea* element. *See* 817 P.2d at 1204-05. The prosecution may show intent by proof that the defendant intended to kill or knew that his acts would "create a strong probability of death or great bodily harm." *See id.* at 1205 (quotation omitted). More precisely, *Ortega* held that the *mens rea* supporting a second-degree murder may support a conviction for first-degree murder "when [the murder] occurs in circumstances that the legislature has determined are so serious as to merit increased punishment." *Id.*; *see also State v. Campos*, 921 P.2d 1266, 1272 (N.M. 1996). The parties do not dispute that the trial court failed to instruct the jury about an intent element in the felony murder charge.

### A.  Whether *Ortega* Reflected New Mexico Law at Time of Conviction

Chapman argues that *Ortega* stated New Mexico law existing at the time his conviction became final. He cites cases for the proposition that a judicial decision interpreting a statute generally applies from the time of the statute's effective date. The cases cited by Chapman do not support his contention.

Contrary to Chapman's argument, the New Mexico Supreme Court has acknowledged that there is no definitive rule about how new decisions apply to earlier convictions. *See State v. Mascareñas*, 4 P.3d 1221, 1228 n.5 (N.M. 2000); *State v. Ulibarri*, 994 P.2d 1164, 1171 (N.M. Ct. App. 1999). That determination is on a case-by-case basis according to the analysis outlined by the United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, 636 (1965). *See State v. Santillanes*, 849 P.2d 358, 367 (N.M. 1993); *see also Mascareñas*, 4 P.3d at 1228 n.5 (acknowledging that United States Supreme Court has abandoned the *Linkletter* test but nevertheless reaffirming the validity of the approach in New Mexico). This approach has been applied in cases requiring statutory interpretation. *See Santillanes*, 849 P.2d at 366-67.

New Mexico decisions indicate that *Ortega* announced a new rule of law. In *State v. Harrison*, a felony murder decision binding at the time of Chapman's trial and discussed in Section IV, *supra*, the New Mexico Supreme Court made no reference to a general intent to kill requirement. *See Harrison*, 564 P.2d at 1324 ("Our felony murder statute conclusively presumes that any homicide occurring during any felony is first-degree murder. . . . In felony murder cases where the felony is a first-degree felony such a presumption is appropriate."); *see also State v. Pierce*, 788 P.2d 352, 357 (N.M. 1990) ("[T]he requisite malice aforethought can be inferred from the commission or attempted commission of the felony . . . .

-15-

[F]elony murder simply contains no *mens rea* requirement." (quotation omitted)). In *Ortega* itself, the New Mexico Supreme Court held that "proof that a killing occurred during the commission or attempted commission of a felony *will no longer suffice* to establish murder in the first degree." 817 P.2d at 1205 (emphasis added). The court also acknowledged that its earlier decisions contained statements about felony murder which were "ill-advised" and "at variance" with the holding and that it would be "necessary to modify them to bring them into conformity with [*Ortega*]." *Id.* at 1203, 1205.

Since the *Ortega* decision, the New Mexico Supreme Court has further indicated that *Ortega* announced a new rule. *See State v. Duffy*, 967 P.2d 807, 814 (N.M. 1998) ("New Mexico is unique in establishing a mens rea requirement for a felony-murder conviction. We *established* this requirement in *State v. Ortega*." (emphasis added)); *State v. Lopez*, 920 P.2d 1017, 1020 (N.M. 1996) ("*In 1991* this Court, in *State v. Ortega*, *imposed* a mens rea requirement for felony murder." (citation omitted) (emphases added)); *id.* at 1020 n.1 (chiding the parties and trial judge for failing to incorporate *Ortega* in the jury instructions, and noting that "[a]ttorneys and judges have an obligation to keep abreast of

-16-

current *changes in the law*" (emphasis added)); *State v. Hernandez*, 846 P.2d 312, 332 (N.M. 1993) ("*Ortega* . . . changed the law regarding felony murder.").[4]

## B.  Retroactive Application of *Ortega*

Chapman next argues that even if *Ortega* did not state the law as it existed at the time of his conviction, this court should apply *Ortega* retroactively to his conviction.  When a state's highest criminal court has resolved the question of retroactivity, that determination is a matter of state law and a federal *habeas* court has no power to grant relief.  *See Jackson v. Shanks*, 143 F.3d 1313, 1324 (10th Cir. 1998); *see also Linkletter*, 381 U.S. at 629 (explaining that the federal

---

[4]These reasons explain why this case is distinguishable from the two cases Chapman relies on in which the federal *habeas* court certified the question whether a state decision stated the law at the time the petitioner's conviction became final.  *See Fiore v. White*, 528 U.S. 23 (1999); *Burleson v. Saffle*, 278 F.3d 1136 (10th Cir. 2002).  In each of those cases, the *habeas* petitioner sought to apply a post-conviction decision by the state's highest criminal court to his case.  *See Fiore*, 528 U.S. at 25-26; *Burleson*, 278 F.3d at 1138-39.  In *Fiore*, the case the petitioner sought to apply marked the first time the Pennsylvania Supreme Court had interpreted the statute at issue; the lower courts had previously been divided in their interpretations.  *See Fiore*, 528 U.S. at 28.  Similarly, in *Burleson*, the Oklahoma Court of Criminal Appeals had not previously addressed the statute at issue in that case.  *See Burleson*, 278 F.3d at 1143-44.  In contrast, here the New Mexico Supreme Court had previously interpreted the state's felony murder statute and did not find a general *mens rea* requirement. *See Harrison*, 564 P.2d at 1324; *State v. Pierce*, 788 P.2d 352, 357 (N.M. 1990).  There is also no indication in either *Fiore* or *Burleson* whether subsequent state cases suggested the rules implicated in those cases were a new rule of law.  Thus, unlike in *Fiore* and *Burleson*, the New Mexico Supreme Court has issued pre- and post-*Ortega* decisions suggesting that it announced a new rule of law in *Ortega*.

Constitution neither prohibits nor requires retroactive application of judicial decisions). In the unusual circumstances presented here, however, when no state appellate court has addressed the retroactivity issue[5] and the federal due process claim is intertwined with the antecedent issue of state law, it is appropriate for a federal *habeas* court to address the state law question to resolve the federal constitutional claim. *See, e.g.*, *Cole v. Young*, 817 F.2d 412, 416-22 (7th Cir. 1987) (deciding whether jury was properly instructed as a matter of state law on the elements of mayhem existing at the time of conviction before turning to federal constitutional claim); *see also Adams v. LeMaster*, 223 F.3d 1177, 1182-83 (10th Cir. 2000) (addressing question of state procedural law to determine whether federal *habeas* petition was time-barred).

In New Mexico, the issue of retroactivity arises only when the rule at issue is in fact a new rule, *i.e.*, when the rule "overturns prior case law or makes new law when law enforcement officers have relied on the prior state of the law." *Mascareñas*, 4 P.3d at 1228 (quotation omitted). In *Mascareñas*, the New Mexico Supreme Court quoted with approval language from *Teague v. Lane*, 489 U.S.

---

[5]Although the state district court concluded in *habeas* proceedings that *Ortega* is a new rule of law and should not be applied retroactively to Chapman's conviction, it is unclear whether this court is bound by that state trial court determination on matters of state law. We need not address this issue, however, because we conclude that the New Mexico Supreme Court would not apply *Ortega* retroactively.

-18-

288, 301 (1989), which states that a case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Mascareñas*, 4 P.3d at 1229. It is clear that the holding in *Ortega* was not dictated by New Mexico's precedents at the time it was decided. *See* Section V.A., *supra*.

Whether a case is applied retroactively is decided on a case-by-case basis by considering: (1) the purpose of the new rule; (2) the reliance placed upon the old rule; and (3) the effect retroactive application would have upon the administration of justice. *See Santillanes*, 849 P.2d at 367 (construing child abuse statute). The purpose of *Ortega* is to "requir[e] proof that the defendant intended to kill (or had the state of mind otherwise generally associated with *mens rea*)." 817 P.2d at 1204. This factor, however, must be balanced against the state's reliance on the felony murder rule before *Ortega*. Law enforcement officials and prosecutors undoubtedly relied on the pre-*Ortega* felony murder law for over thirty years. *See* N.M. Stat. § 40A-2-1 (1953). In *Santillanes*, the New Mexico Supreme Court concluded that reliance had been placed upon an old rule after noting several decisions endorsing it. *See Santillanes*, 849 P.2d at 367. Similarly, here the New Mexico Supreme Court had previously endorsed the pre-*Ortega* rule for felony murder. *See Pierce*, 788 P.2d at 357; *Harrison*, 564 P.2d at 1324. Finally, New Mexico has an interest in the finality of its convictions.

-19-

*See Jackson v. State*, 925 P.2d 1195, 1197 (N.M. 1996) (explaining that applying a new rule of statutory interpretation retroactively would "unnecessarily diminish the expectations of finality so important to the rule of law").  Reversing Chapman's twenty-three-year-old conviction, which was properly obtained under the governing law at the time and upheld on direct appeal and collateral proceedings, would undermine the state's interest in finality.  Indeed, even when the New Mexico Supreme Court has concluded that a subsequent decision stated the law existing at the time of the conviction, it has distinguished between cases on direct review from those on collateral review.  *See State v. Kirby*, 930 P.2d 144, 146 (N.M. 1996) (noting that considerations justifying reversal of conviction based on erroneous instruction do not apply to post-conviction proceedings).

Applying *Ortega* retroactively would require retrial of those convicted of felony murder without an *Ortega* instruction, which may not be feasible depending on the availability and age of witnesses and evidence.  The state's reliance on the finality of its convictions, the New Mexico Supreme Court's endorsement of the pre-*Ortega* rule, and the burden of retrying those convicted of felony murder prior to *Ortega* outweighs *Ortega*'s retroactive imposition of a *mens rea* element in the felony murder statute.  Because we conclude that New Mexico would not apply *Ortega* retroactively to Chapman's felony murder

conviction, his conviction does not violate federal due process standards. We therefore affirm the district court's denial of his *Ortega* claim.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Chapman's final claims rest on the ineffective assistance of pretrial and trial counsel. He contends that his pretrial counsel, Douglas Moeller, did not perform effectively when he allowed Chapman to make an incriminating pretrial statement, failed to advise Chapman about accomplice liability under the felony murder doctrine, and did not tell Chapman that duress is not a defense to murder in New Mexico. Chapman also argues that his trial counsel, Mark Donatelli, gave ineffective assistance by failing to preserve the pretrial statements of Jim Humiston, a prosecution witness. The state district court concluded that the performance of pretrial and trial counsel was reasonably effective under the circumstances, was not below the minimum level of competence, and in any case did not prejudice Chapman. The federal magistrate judge's recommended disposition, which was adopted by the district court, determined that the state court's conclusion was not contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

Before Chapman is entitled to a COA on his ineffective assistance claims, he must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Chapman may make this showing by demonstrating that

"reasonable jurists could debate whether . . . the petition should have been resolved in a different manner" or that the questions presented deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). After consideration of Chapman's request for a COA and a *de novo* review of the magistrate judge's recommended disposition, the district court's order, and the record on appeal, this court concludes that Chapman has not made a "substantial showing of the denial of a constitutional right" and is thus not entitled to a COA on his ineffective assistance claims.

## VII. CONCLUSION

This court **AFFIRMS** the denial of relief on the *Ortega* due process claim. We **DENY** Chapman's request for a COA on his *Harrison* due process and ineffective assistance claims and **DISMISS** those parts of the appeal.