NANCY KLOSTERMAN, Individually and as Guardian
    Ad Litem for EDWARD RICHARD KLOSTERMAN,
    KRISTY KLOSTERMAN and ROBERT LYNN
    KLOSTERMAN, Minors, Appellants, v. PHIL CUM–
    MINGS, Special Administrator of the Estate of
    LESLIE CURTIS SUMNER, Respondent.

No. 5980

October 8, 1970                           476 P.2d 14

*Echeverria & Osborne,* of Reno, for Appellants.

*Singleton, Beckley, DeLanoy, Jemison & Reid,* of Las
Vegas, for Respondent.

## OPINION

By the Court, BATJER, J.:

This appeal is from a judgment of dismissal entered by the district court, pursuant to NRCP 54(b), in a wrongful death action that arose out of a mid-air collision near Las Vegas, Nevada, between a military aircraft piloted by Edward Klosterman and a small private airplane piloted by Leslie Curtis Sumner.

The action was commenced by the widow and minor children of the deceased air force pilot against the special administrator of the estate of the deceased private pilot.

The dismissal rests upon NRS 140.040(3) which precludes liability of a special administrator to an action by a creditor on a claim against an estate.[1]

The appellant contends that the trial court erred in deciding that a special administrator of an estate cannot be sued where the sole asset is a liability insurance policy.

In Bodine v. Stinson, 85 Nev. 657, 461 P.2d 868 (1969), a case of first impression construing NRS 140.040(3) and directly in point, we said: "The confusion with regard to the issue at hand comes about by reason of certain language in NRS 140.040 defining the powers and duties of a special administrator. Subsection 2(a) provides that the special administrator may '[f]or any and all necessary purposes, commence, maintain or defend suits and other legal proceedings as an administrator.' On the other hand, subsection 3 provides that '[i]n no case shall the special administrator be liable to an action by any creditor, on any claim against the estate, nor pay any claim against the deceased.' It is our task to reconcile these provisions, if possible, and give meaning to each. The appellants insist that since the special administrator may maintain an action for wrongful death [Nevada Paving Inc. v. Callahan, 83 Nev. 208, 427 P.2d 383 (1967)] he may also defend such an action. The respondent counters with the contention that since a special administrator is not liable to a creditor of the estate and may not pay his claim, he cannot

---

[1] NRS 140.040(3) reads: "In no case shall the special administrator be liable to an action by any creditor, on any claim against the estate, nor pay any claim against the deceased."

be the proper party to defend a wrongful death action. Cf. Weiler v. Ross, 80 Nev. 380, 395 P.2d 323 (1964).

"Although NRS 41.110 provides that a cause of action for wrongful death 'shall not abate by reason of the death of the person against whom such cause of action shall have accrued, but shall survive against his legal representatives,' it does not follow that such legal representative is personally liable for the judgment if one is obtained. The liability to actions embraced by NRS 41.110 is that of the decedent's estate. Zeigler v. Moore, 75 Nev. 91, 99, 335 P.2d 425 (1959) (dictum). The words 'legal representatives' as used therein are not referrable to liability but are used to identify the person against whom suit may be instituted. Since a special administrator is not liable to a creditor of the estate and may not pay his claim, he is not a 'legal representative' subject to suit within the contemplation of the wrongful death survival statute. That 'legal representative' is one who is authorized to pay claims for which the estate is liable, such as a general administrator or executor.

"A general administrator would have authority to act upon wrongful death claims. NRS 147.110. A special administrator is not a general representative of the estate. He is an emergency officer with limited authority to care for and preserve the estate until an executor or general administrator is ascertained or appointed as its proper legal representative. Rich v. Dixon, 212 A.2d 421 (Conn. 1965); see NRS 140.070. He is not to conduct the administration of the estate.

"Our statutory scheme for the administration of estates contemplates that '[a]ll persons having claims against the deceased' shall file the same (NRS 147.040) in proper form (NRS 147.070) for examination by the executor or administrator (NRS 147.110). If the claim is rejected suit thereon must be timely filed or it is barred. NRS 147.130. We find nothing to suggest that this procedure may be disregarded in prosecuting a wrongful death action against the estate of the deceased tort-feasor. Indeed, since a special administrator may not pay creditors' claims (NRS 140.040(3)) it is evident that a claimant is forced to proceed under [NRS] ch. 147."

The appellant asks this court to overrule *Bodine,* or in the alternative to remit the matter to the district court to permit her complaint to be amended to substitute a general administrator when one is appointed. The appellant is really asking us to reverse the trial court through the process of judicial legislation. If an exception is to be made in the procedure for processing a claim against an estate where the only asset is

a policy of liability insurance, the proper forum to effect such a change is the legislature. It is not for this court to torture the present statutory scheme to reach the position espoused by the appellant.

The hardship which a dismissal with prejudice may cause is most strongly urged by the appellant, however, her situation is not unique. Whenever the legislature enacts a statutory bar to an action someone at some time may suffer. We cannot judicially legislate to alleviate a harsh result occasioned by a legislative enactment. The appellant's arguments could just as well be made where an action is barred by the statute of limitation.

We reaffirm *Bodine* and turn to the appellant's request that she be permitted to amend her complaint to substitute a general administrator as the party defendant. This we cannot do. The running of time cannot be halted to allow the appellant to properly perfect her claim. Nevertheless, we deem the question of prospective application of *Bodine* to be an issue before us and we shall proceed to consider it.

The rule regarding retrospective application of decisions of the United States Supreme Court is set forth in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. That case held that the decision rendered in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, requiring exclusion, in state criminal trials, of evidence seized in violation of the search and seizure provisions of the Fourth Amendment to the United States Constitution, did not operate retrospectively upon cases finally decided prior to *Mapp.* In so concluding, the High Court reviewed the common law history and theory of the subject of retrospective application of judicial decisions. The court noted the "Blackstonian view" to the effect that judicial opinions do not pronounce a new law but expound the old one. Under that theory unconstitutional action confers no rights, imposes no duties, furnishes no protection and, is as authoritative as if it never existed. According to that view, no authority existed for the proposition that judicial decrees made law only for the future.

The High Court also referred to the "Austin concept" which holds that judicial decisions make law. This view expresses the idea that overruling of a prior decision implies admission that the former case was erroneously decided. However, the former decree is not considered erased by the latter overruling opinion. Rather, it is deemed an existing juridical fact until

overruled and intermediate cases finally decided under it are not to be disturbed. In *Linkletter,* the court then considered several specific cases in which the subject matter was discussed, including Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, where it was held that in determining constitutionality, the existence of the prior law is an operative fact which may have consequences which cannot be ignored. The decision also held that "The past cannot always be erased by a new judicial declaration. . . . [T]he effect of the subsequent ruling as to invalidity may have to be considered in various aspects."

In *Linkletter,* the rule was stated as follows: "While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-established common-law rules, there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application. It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the federal constitution has no voice upon the subject.' Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. . . ."

Furthermore, *Linkletter* establishes that changes in law, whether substantive or procedural may be accorded prospective application and it proceeded to establish guidelines by which the issue of retroactive versus prospective application is to be determined: "Under our case it appears (1) that a change in law will be given effect while a case is on direct review, Schooner Peggy, supra, [United States v. Schooner Peggy, 5 Cranch 103, 2 L.Ed. 49], and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations . . . and particular conduct . . . of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy

in the light of the nature both of the statute and of its previous application.' Chicot County Drainage Dist. v. Baxter State Bank, supra, 308 U.S. at 374, 60 S.Ct. at 319, [84 L.Ed. at 333].

"That no distinction was drawn between civil and criminal litigation is shown by the language used not only in Schooner Peggy, supra, and Chicot County, supra, but also in such cases as State v. Jones, 44 N.M. 623, 107 P.2d 324 (1940) and James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961)."

In Ashton v. Cameron County Water Improvement District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, the High Court held unconstitutional the statute on which the Federal District Court based its reorganization decree. In holding that its subsequent decision did not preserve plaintiff's rights as a bondholder after one year elapsed from the date of the District Court's judgment, the Supreme Court stated: "It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature of both of the statute and of its previous application, demand examination." Cf. Molitor v. Kaneland Community Unit District, 163 N.E.2d 89 (Ill. 1959); City of Phoenix, Arizona v. Kolodziejski, 399 U.S. 204 (1970); see also Time and Change in Judge-Made Law; Prospective Overruling, 51 Va.L.R. 210.

In Stokes v. Aetna Casualty and Surety Company, 232 So.2d 328 (La.App. 1970), that court said: "We conclude, therefore, that the question of retroactive or prospective application of civil law changes must be determined in the light of (1) extent of reliance on previous legislation or judicial decisions, (2) the reasonableness of such reliance, (3) the degree of hardship resulting from a retroactive application of the change, (4) the public interest in the stability of the social institutions involved, if any, and (5) the purpose and intent of both the new and old rule."

The appellant contends that she relied upon a reasonable interpretation of NRS 140.040 and NRS 41.110, as well as upon Nevada Paving Inc. v. Callahan, 83 Nev. 208, 427 P.2d 383 (1967), when she filed her complaint against the special administrator. In neither situation do we deem the reliance reasonable. NRS 140.040(3) clearly and unequivocally declares that "in no case shall the special administrator be liable to an action by any creditor." That prohibition is not personal but it is directed to a special administrator's acting in his official capacity. Even if we were persuaded by the appellant's argument that she was misled in her interpretation of NRS 140.040, we must call to her attention the wording of NRS 147.150, which precludes a holder of a claim, against an estate, from maintaining an action unless the claim is first filed with the clerk of the court in compliance with the provisions of NRS 147.040. There is no contention by the appellant of such compliance. Furthermore, a plaintiff who has a pending action against a deceased, at the time of death, must file his claim with the clerk and no recovery shall be allowed in the action unless there is proof of the filing. (NRS 147.100.) A fortiori if a plaintiff with an action pending in court must file with the clerk before recovery can be allowed, most certainly a plaintiff with a new claim cannot ignore the procedural requirements and expect to recover.

The appellant's reliance on Nevada Paving Inc. v. Callahan, supra, is likewise unreasonable. Authorization to maintain an action for wrongful death is 180 degrees removed from authority to defend such an action. In the prosecution of a claim the estate has a chance of acquiring additional assets. The commencement of such an action would be the collecting and preserving of claims of the estate. Such conduct by a special administrator would be in the performance of his duties. (NRS 140.040.) In the defense of an action only obligations and liabilities can be incurred. It is for that reason that narrow rules must apply to the filing and prosecution of claims against estates.

The posture of this appeal does not resemble any of the cases considered which support or require prospective application of a decision construing a legislative enactment. We find no legal basis for the appellant's contentions and affirm the judgment of the district court.

COLLINS, C. J., ZENOFF and THOMPSON, JJ., concur.

CRAVEN, D. J., concurring:

I concur in the result reached by the majority in the light of Bodine v. Stinson, 85 Nev. 657, 461 P.2d 868 (1969).

However, in determining whether the minority of the children tolls the running of the statute of limitations in this case involves several legal issues, which eventually would have to be determined in future litigation.

First, does the right conferred by the wrongful death statutes vest in the minor alone or in the guardian ad litem? This court held in Barney v. County of Clark, 80 Nev. 104, 389 P.2d 392, 393 (1964), that,

"Upon the death of his father an estate resulted to the plaintiff under our wrongful death statutes in the nature of a cause of action against the wrongdoer."

It may be that the right of action for the wrongful death of the children's father should be vested in the children, and not the guardian ad litem. However, NRS 12.090 clouds this point when it states the parties who may bring the action for wrongful death:

"The action may be brought by the heirs of the deceased or by his personal representatives or guardian for the benefit of his heirs."

Even if one was to conclude that the right of action vests in the minors and the guardian ad litem, the issue arises as to what effect will the commencement and dismissal of the action by the guardian ad litem have on the children's rights of action after they reach majority.