# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant/Cross-Respondent,
vs.
CARLOS PEREZ GUTIERREZ,
Respondent/Cross-Appellant.

No. 74236

FILED

DEC 04 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal and cross-appeal from a district court order granting in part and denying in part a postconviction petition for a writ of habeas corpus. Second Judicial District Court, Washoe County; Jerome M. Polaha, Judge.

Respondent/cross-appellant Carlos Gutierrez pleaded guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to first-degree murder in the death of his three-year-old stepdaughter Mailin. A three-judge panel found a single aggravating circumstance—that the murder involved torture and depravity—and a single mitigating circumstance—that Gutierrez had no prior criminal history. The panel concluded that the mitigating circumstance did not outweigh the aggravating circumstance and sentenced Gutierrez to death. This court affirmed the judgment of conviction and death sentence on direct appeal. *Gutierrez v. State*, 112 Nev. 788, 791, 920 P.2d 987, 989 (1996). Gutierrez then unsuccessfully challenged his conviction and sentence in a timely filed postconviction petition for a writ of habeas corpus. *Gutierrez v. State*, Docket No. 33643 (Order Dismissing Appeal, June 9, 2000).

20-43933

A little over two years after this court decided his first postconviction appeal, Gutierrez filed a second postconviction petition for a writ of habeas corpus. The petition reasserted a number of claims challenging the validity of Gutierrez's guilty plea, but it also raised two new claims. One of the new claims focused on an alleged violation of Article 36 of the Vienna Convention on Consular Relations (VCCR), which requires the State to notify a foreign national of his right to consular assistance.

The district court initially dismissed the second petition on procedural grounds, concluding that it was untimely and successive and Gutierrez had not shown good cause and prejudice as required by NRS 34.726(1) and NRS 34.810(2). We reversed and remanded. *Gutierrez v. State*, Docket No. 53506 (Order of Reversal and Remand, Sept. 19, 2012). In particular, we concluded that Gutierrez had shown cause for the delay because he filed his petition shortly after the International Court of Justice held in *A Case Concerning Avena & Other Mexican Nationals (Avena)*, 2004 I.C.J. 12, that the United States violated the VCCR by failing to inform Gutierrez of his right to consular assistance in defending his capital murder charge. But we further explained that Gutierrez had to show that he suffered actual prejudice to a constitutional right due to the lack of consular assistance. And we concluded that Gutierrez was entitled to an evidentiary hearing to make that showing. Thus, we remanded for the district court to conduct an evidentiary hearing and determine whether Gutierrez could establish actual prejudice based on the VCCR violation and thereby overcome the procedural bars.

The district court followed our instructions to the letter, hearing from 27 witnesses over the course of 14 days. The court heard testimony from numerous individuals who worked directly or indirectly for the

Mexican consulate around the time of Gutierrez's arrest. They explained that the consulate or its designees would have assisted Gutierrez's attorneys if asked to do so, by performing tasks like investigating, conducting research, finding and paying for experts, and/or drafting motions. Consular designees would also have attended the trial and monitored the case, and if it appeared that Gutierrez's attorneys were not performing adequately, the consulate would have expressed concern to the Mexican Ministry of Foreign Relations and the Consular Post, and might have recommended that the Mexican government try to get involved further, including by attempting to arrange new representation. The district court also heard extensive testimony as to the mitigating evidence counsel would have had access to had they been assisted by the consulate or its designees. After considering all of the testimony and post-hearing briefs from the parties, the district court concluded that Gutierrez had shown actual prejudice to his right to effective assistance of counsel in the presentation of mitigation evidence at the penalty phase due to the VCCR violation. Because the district court's exhaustive factual findings are supported by the record and its legal conclusions are sound, we affirm.[1] *See State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012) (stating that appellate court "give[s] deference to the district court's factual findings regarding good cause" but "review[s] the court's application of the law to

---

[1]Our prior decision pointed to a possible area of prejudice as a result of the VCCR violation: possible mistranslation of some testimony during the penalty hearing. The district court determined on remand that Gutierrez had not been prejudiced by any mistranslation at the penalty hearing. Giving deference to the district court's factual findings because they are supported by the record, we agree.

those facts de novo"); *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005) (using similar standard of review with respect to ineffective-assistance claims).

Gutierrez's trial attorneys conducted a narrow investigation before the penalty phase. They made an initial effort to look into Gutierrez's obvious mental health issues, but they ultimately abandoned that effort and instead focused their resources on investigating Gutierrez's culture. Counsel essentially argued to the three-judge panel that Gutierrez's belief in curses and demons was normal in his culture, and by extension, that his cultural background predisposed him to react to his young stepdaughter by killing her as he did. We agree with the district court that the scope of the penalty-phase investigation would have been significantly broader had the State complied with the VCCR.

The testimony Gutierrez presented at the evidentiary hearing demonstrated that the Mexican government and its designees were ready, willing, and able to fund a comprehensive mitigation investigation in Mexico. And witness after witness testified that such an investigation would have uncovered a trove of mitigating information about Gutierrez's upbringing. When armed with the information discovered through an investigation assisted by the Mexican government, we doubt that objectively reasonable counsel would have proceeded with the cultural-background mitigation strategy that quickly and predictably fell apart. *See Doe v. Ayers*, 782 F.3d 425, 435 (9th Cir. 2015) ("Death is different. So too are the lengths to which defense counsel must go in investigating a capital case." (internal alterations and citations omitted)).

We further agree with the district court that Gutierrez showed there was a reasonable probability that consular involvement would have

changed the outcome at the penalty phase. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Gutierrez demonstrated at the evidentiary hearing that with consular assistance, counsel could have presented a significantly more compelling mitigation case. The witnesses who testified at the evidentiary hearing explained that Gutierrez grew up in an impoverished community in San Francisco Del Rincon, Mexico—a town widely known as one of the most chemically-contaminated places in Mexico due to its many factories, including a plant that manufacturers the deadly chemical compound Chromium 6. At a young age, Gutierrez was forced to work at one of the factories applying toxic glue and other chemicals to the soles of shoes, without adequate safety equipment to protect him from the noxious fumes. As a young child, he came home from work covered in yellow glue, complaining of headaches. In addition to the toxic exposure he experienced working as a young child to support his family, he was routinely exposed to dangerous chemicals at home: he lived next to, and worked in, fields where pesticides were sprayed; ate from lead-laden cookware; and was treated for illnesses with substances that included toxic doses of lead. Experts testified that the result of this kind of chronic exposure to toxins can cause impulsivity, violent behavior, aggressiveness, and irritability. All of this evidence was unrebutted at the evidentiary hearing, and the district court found it to be credible and compelling.

Even without a medical or forensic component to it, this type of evidence constitutes "classic mitigation." *Robinson v. Schriro*, 595 F.3d 1086, 1110 (9th Cir. 2010); *see also Caro v. Woodford*, 280 F.3d 1247, 1258 (9th Cir. 2002) ("More than any other singular factor, mental defects have

SUPREME COURT
OF
NEVADA

(O) 1947A

been respected as a reason for leniency in our criminal justice system."). This mitigation evidence may have humanized Gutierrez contrary to the testimony actually presented in the penalty phase, which back-fired miserably. *See Mayes v. Gibson*, 210 F.3d 1284, 1288 (10th Cir. 2000) (explaining that the presentation of mitigation evidence "affords an opportunity to humanize and explain—to individualize a defendant outside the constraints of the normal rules of evidence"). But more than that, this evidence offered an explanation for Gutierrez's violent reaction to normal behavior for a young child. The district court was also in a better position to evaluate the emotional resonance of this evidence and how it might have affected the decision at sentencing.

Because Nevada officials did not comply with the VCCR, Gutierrez was deprived of meaningful assistance from the Mexican government that would have produced a more compelling mitigation case and the three-judge panel was unaware of mitigating evidence that would have been reasonably likely to affect its decision. *See Lockett v. Ohio*, 438 U.S. 586, 603 (1978) (explaining that the sentencer should be presented with "the fullest information possible concerning the defendant's life and characteristics," which is "highly relevant—*if not essential*—to the selection of an appropriate sentence" (internal quotation marks and alterations omitted)). We agree with the district court's conclusion that in this particular case, based on what was adduced at the evidentiary hearing on remand, the failure to comply with the VCCR caused Gutierrez actual

SUPREME COURT
OF
NEVADA

(O) 1947A

prejudice to his constitutional right to the effective assistance of counsel at the penalty phase.[2] Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Cadish

_____, J.
Silver

PARRAGUIRRE, J., with whom HARDESTY and STIGLICH, JJ., agree, dissenting in part:

Gutierrez had to demonstrate good cause to excuse the procedural bars to his untimely and successive petition as required by NRS 34.726(1) and NRS 34.810(2) and (3). I disagree with the majority that our prior decision concluded that Gutierrez had demonstrated good cause given that it remanded for an evidentiary hearing "regarding his ability to

_____

[2]We are not convinced that Gutierrez demonstrated actual prejudice to his constitutional rights with respect to his *Alford* plea or the proceedings leading up to it.

overcome the procedural bars."[3] *Gutierrez v. State*, Docket No. 53506, Order of Reversal and Remand at 1-2 (Sept. 19, 2012). Regardless, I still am not convinced that Gutierrez has demonstrated good cause. *See generally id.* at 1-2 (Parraguirre, J., dissenting).

Gutierrez's good-cause argument hinges on the International Court of Justice's decision in *Avena*, suggesting that it provided the basis for a claim that was not previously available. That argument is flawed in at least three respects. First, even assuming that Article 36 of the VCCR confers individual rights, *c.f. Cardenas v. Dretke*, 405 F.3d 244, 253 (5th Cir. 2005) ("[T]he Vienna Convention does not confer individually enforceable rights."), *Avena* is not binding on this court and says nothing about this state's statutory procedural bars.[4] *Medellin*, 552 U.S. at 522-23. Second, the underlying claim—that Nevada officials failed to comply with the VCCR by notifying him upon his arrest of his right to contact his home consulate—has been available from the moment the violation occurred. It therefore could have been raised at trial, on appeal, or in the first timely postconviction proceeding. *See Clem v. State*, 119 Nev. 615, 621, 81 P.3d 521, 525 (2003) ("To establish good cause, appellants must show that an impediment external to the defense prevented their compliance with the applicable procedural rules . . . [such as] where the factual or legal basis for

---

[3]Notably, the focus in our prior decision was on concerns that an interpreter may have misrepresented witness testimony that was integral to the penalty hearing and the three-judge panel's decision to impose a death sentence. The evidentiary hearing on remand confirmed that Gutierrez had not been prejudiced by any mistranslations at the penalty hearing, which puts to rest the concerns previously expressed by this court.

[4]The United States Supreme Court has also recognized that *Avena* was not correctly decided. *Medellin v. Texas*, 552 U.S. 491, 517-18 (2008).

a claim was not reasonably available at the time of any default."). Nothing in *Avena* changes that dynamic. In fact, Gutierrez raised the VCCR claim in his second petition *before* the ICJ decided *Avena* and then supplemented his claim with *Avena*, thus showing that the claim's availability did not depend on *Avena*. Third, even if the VCCR claim was not previously available, that still would not amount to good cause because the claim does not implicate Gutierrez's constitutional rights. *See Clem*, 119 Nev. at 621, 81 P.3d at 525-26 ("[W]e now determine that proper respect for the finality of convictions demands that this ground for good cause be limited to previously unavailable constitutional claims."); *Garcia v. State*, 117 Nev. 124, 128, 17 P.3d 994, 996 (2001) (holding that VCCR violations are not of a constitutional dimension). For these reasons, I would hold that Gutierrez did not demonstrate good cause and therefore the district court should have denied the petition as procedurally barred. Accordingly, I dissent to the extent that the court affirms the district court's decision to grant the postconviction habeas petition in part and afford Gutierrez a new penalty hearing.

_____, J.
Parraguirre

We concur:

_____, J.
Hardesty

_____, J.
Stiglich

cc: Hon. Jerome M. Polaha, District Judge
Attorney General/Carson City
Washoe County District Attorney
Federal Public Defender/Las Vegas
James Scott Thomson
Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A